Derek Patrick Bartlett. And Mr. Wiggins, once you get settled, you can proceed to the podium and begin. I see that you have reserved time for rebuttal. Good morning, my police corps, Kerry Wiggins, along with Molly Davis. I'm not sure how I'm following Governor Barnes, that's not fair. So the issue in this case is really straightforward in the abstract, it is whether the defendants are entitled to a qualified immunity on the excessive force claim. Our client or our client's son is a child, was a child. And he was choked and then body slammed in the school. Let me ask you an initial question. Do you dispute that it was reasonable for officers to believe a fight was in progress at the school, keeping in mind we've seen the videos? I understand. I think we all can see that at least initially when Coach Edgar radios out, I need help, there's probably an assumption the commotion is a fight. You said initially, this is all happening, the body cam footage when the officers are arriving on the scene to what appears to be a fight, then the contact with your client's son is happening really rapidly, correct? I agree that things are happening rapidly. Everything, context is king in Fourth Amendment cases. And I do agree that it's happening somewhat rapidly. But if you, if I could, Judge Branch, Exhibit 66, those are the videos, Exhibit, excuse me, Doc 66, Exhibit B, that video, if you slow it down the way some of the earlier videos we discussed this morning, at about 10 or 11 seconds into that video is when Officer Britt arrives to the vending machine. Remember, he was following Latavia Washington, another SRO, and of course Coach Edgar was there. I was going to say, and the coach looks like he's a varsity football coach, and he looks like he's a pretty large guy, and he's intervening to help in the dispute. He is. You're exactly right. And he, when you, and let's just say this also, none of the videos, A, B, or C, conclusively resolve this case. Okay? And let me ask you just sort of another initial question, since, is it reasonable for an officer in a school situation to, what they perceive to be a fight, is it reasonable for the officer to break up that fight for student safety? No one is saying that an officer might not need to break apart a fight that an officer is witnessing. If two students are fist fighting, and I would want that to happen. Even if they perceive there to be a fight, in other words, an officer is jumping in, is told that there's a fight, sees a crowd, perceives there to be a fight, does it, is it not reason, and again, we look at it objectively, as you know, is it not reasonable for an officer to, for purposes of student safety, to intervene, to separate out the fight? Well, I think the perception is one of reasonableness, and I think that, I'll get to it, but I think that may present a jury question, and we believe it does. Because, and this is why Judge Luck, again, at ten seconds in, maybe eleven, that's when Officer Britt, he's the one with the working body cam, arrives. Coach Edgar has Asa Glenn, and the other young man who's, I believe, 16, Reed, he's holding them with two hands, and he's saying, at 12 seconds, 13 seconds, 14 seconds, they're good, they're stealing, they're stealing, we're good, we're good, they're stealing, they're  That happens over from at least 11 or 12 seconds in the video, all the way up to about 16 seconds in the video. And I know five seconds, Judge Branch, your point about this is a very quickly evolving situation, but that's a lot of time, that's a lot of time in a qualified immunity case, especially when this court's jurisprudence is, is rampant with cases that talk about was his finger on the trigger, was his finger, you know, was the machete coming out of his, out of his pocket. Here we have five seconds, and you can hear it plainly on the video where Coach Edgar is telling Officers Britt and Bartlett, we're good, we're good, and you, and so we think that that presents a jury question, at least. Even though the, the, the den of the, of the room is still fairly large, the students are still gathered? I, I know that How is this not an ongoing situation is really what I'm trying to get at. I understand your question. Again, I think my opponent's brief mentions there were 300 or more students in the Commons area. That is incorrect. That is lifted from Lieutenant Smith's deposition, Exhibit 3A, in a memo he wrote to his superior. If you watch the video, you can see Officer Washington, she's moving, she's trotting over to the vending machine, but she's, she's going in and out of people. This is not a How many, how many students do you estimate were surrounding the vending machine? You said not 300. I, I actually found the video. It doesn't look like 300. So how many? 20? And it's, it's hard to see. We're talking tens, maybe 15. Right in front of the vending machine, it's But we have a large group of students. They're standing idle, they're standing idle. You think, you think they're just standing idle in the video? They're, they're, everybody is moving. There's a lot of noise. All the activity is surrounding the vending machine. How does, how does it not look like a fight? No, no. Judged initially, but I'm talking about Exhibit B, the video that shows, I believe it's about six minutes long actually, but the first 20 or 30 seconds, that part where Officer Washington is traversing the crowd to get to the vending machine, there's not, there are just a few people, loose people standing around the perimeter of the vending machine. Once you get to the vending machine, it's just Coach Edgar sort of holding these two 100. But, but counsel, if you're Officer Britt, followed by Officer, is it Barrett or Bartlett? Bartlett. Bartlett? Bartlett. The second officer's name. Yes. Thank you. So if you're those two, what you know is you're somewhere else at the school, you're not there. You hear there's a fight, it's called to you. You run to go there, you see the commotion that Judge Branch just described, and you see one of the employees at the school who called with two people trying to hold them back. How is it unreasonable to immediately, it's not like they stood there for a while and did nothing, but immediately go and help the coach with one of the students that gave a two second choke hold and immediately let him go, and for the other officer to then take the student and move him back forcefully? I can see, forcefully. Right. I think, again, the video has audio where these officers are being told over four, at least four, probably five seconds, we are good, they're stealing, they're stealing. And I understand objective reasonableness is what governs, not subjective. And so as I understand the choke hold was only two seconds, so is that, so Officer Britt is the one who perceives that first. Officer Bartlett comes in afterwards, but Officer Britt perceives that and lets go. Right. In fact, completely lets go, and Officer Bartlett, who then follows, does his move, which is only a few seconds, and then he is told everything is good, it's just a stealing incident, it isn't a fight incident, and then lets him go and in fact helps him up, right? Judge, frankly, I think it's a jury question, question of fact, when both Officer Britt and Bartlett were told, we're good, they're stealing, we're good, we're good, they're stealing. I count four or five times before, before the takedown and probably before the choke. And, you know, if you're told there's a fight, but once you happen upon the event, Coach Edgar has it under control, I think that's a jury question. So Coach Edgar... Does the video, if you're a reasonable officer going there, knowing the history of fights, I didn't mention that part, but knowing the history of fights, do you think him struggling with two students looks like he has it under control? Well, he's standing in front of an open vending machine telling them they're stealing. Well, it all happens very quick. I know you want to separate it out in milliseconds, but they're running in, he immediately goes to guy number two, guy number one is still held by Officer Washington, I think it is, or Williams. No, Officer Washington. Officer Washington. It's Coach Edgar, really, yeah. Right, so Officer Washington handles one person, Officer Britt handles another for two seconds, then understands and perceives that it isn't actually what he understood it to be and lets go. Officer Bartlett, who comes in afterwards, then moves the person away and then does his takedown and then realizes it and then brings it up. What we've always said is, in addition to the things you've said, is we don't play armchair to police officers on the scene because things look very easy. I think we've even used the terms of like paper cuts and paper clips and things like that in our office. It's very difficult on the scene there and it's hard to say in that scene, given that, that the force that was used there was excessive given all of these surrounding circumstances. How do we get there? Well, how do we know that this wasn't just a microaggression? You know, these two large, you know, there's a racial disparity, they're in there, they're frustrated, they see fights all the time, they come in, they see the open vending machine, they're being told it's just, they're just stealing, they're just stealing. And they're like, you know what, I don't care, I'm going to throw this kid down on the floor. You have to have some evidence to have that inference. In other words, sometimes there is, sometimes racial epithets are used, sometimes there's a history of racial tension. Certainly there's, there can be evidence of those things, but we don't just make that assumption, do we? Well, I don't know. Officer Grigg, about, I don't know, three minutes into the video says, you're going to jail, boy. You know, that's not the way you talk to somebody. I don't know. I think you can take that circumstantially. I mean, we started out with a corporal punishment claim because I really did think the intent, and I stand by it, I'm not here on appeal on that, but, and it's a hard, a high burden, I understand. But I thought it was a sua sponte punishment for stealing because they were told a number of times they're stealing before the choke and certainly before the takedown. And you know, they, I'm sure my opposing counsel is going to say, well, he lifted it up and he carried him over to the side and he's placed him on the ground for safety. I mean, that's the kind of help we can do without. But you've also, you're also saying that if there's a constitutional violation, the officers are not entitled to qualified immunity, but are you, and you're proceeding under the obvious clarity prong of that, but you have not identified any case that establishes that an officer responding to an ongoing situation that they reasonably believe to be a fight using force to separate two students is a clear violation of the Fourth Amendment. How do you, how do you get past, you want this to be a jury question, but you've got to get past qualified immunity. Just to be clear, Judge Branch, we're also saying it's a broader, clearly established principle because . . . Well, the Supreme Court keeps telling us, be very, very careful about how broad you go. I understand, and I've lived and breathed it just as the Court has with the high generality and all that. But this is a 14-year-old, 120-pound child that a grown man, 265 pounds, throws to the point where his head's hitting a brick wall. And you know, I've read in the briefing, well, he, you know, he didn't do a takedown with it. He didn't kick him with his feet. That's probably because Officer Bartlett knew he would hit his head against the darn wall if he tried that maneuver. And by the way, you can see his knee coming, Bartlett's knee coming out, and we don't get to see the thrust with which he puts Asa on the ground, but we see how he pulls him and drags him, drags Asa once Asa is on the ground. This is not somebody . . . Isn't he dragging him away from the wall because his head did hit the wall? He's dragging him toward himself so he can reach him on the side of the vending machine. I understand the Court's apprehension, but this is one of those cases where it is a violent and completely unnecessary maneuver. I'll grant the Court that the choking was quicker. It's still disturbing to me as a parent. I have a 14-year-old. But the takedown, absolutely inappropriate. We think it's a jury question because I don't know that the situation wasn't under control with Coach Edgar. I mean, he clearly is telling them, I got this, we're good, we're good. So under control, no one . . . You're suggesting that the situation was under control? I am. And it can't be. Based on the . . . And we've seen the video. You're suggesting that that was an under control situation? Judge, go to a concert, go to a Dead Kennedys concert, that's a mosh pot, mosh pits and there's still control, okay? But it can't be that just because there's commotion in the commons area that the . . . It's not just that. The police were summoned saying there's a fight and there was a history of fighting that went on at this school. How is that not reasonable that when the officers arrived on the chaos around the vending machine that they perceived it to be a fight? Even Officer Washington, you can hear her voice saying, well, that's a little bit later, but early on she says, let him go, let him go. That's at around 14 seconds in. She was ahead. Well, and then he helped the student up. Well, no, this is before the takedown, this is before that. Officer Washington is there saying, let him go, let him go. I think she's talking to Britt with a choke, but it's before the takedown. And if she, who arrived to the vending machine before both Bartlett and Britt, could see, along with Coach Edgar, that he had this situation under control in the sense that there's no fight, zero fight, that's a spoiler alert, there's no fight. And I don't think it's proper for the district court or this court to take it away from a jury and say, nothing to see here. It's a rapid evolving situation, split second judgments, all that kind of stuff. Five seconds can be an eternity in a situation like this. And again, I don't know, I don't think, no matter what, even if there was a fight, throwing the child down on the floor like that was absolutely excessive. You have, your time is up, but you have time for rebuttal. Ms. Woodward. May it please the court, good morning. I'm Karen Woodward on behalf of School Resource Officers Britt and Bartlett. As you're well aware, the reasonableness of the officers must be judged from the perspective of a reasonable officer on the scene, recognizing that the officers are forced to make split second decisions in situations that are tense and rapidly evolving. And this certainly meets that definition. How is it reasonable when the coach is indicating in the video that they're stealing? How is it reasonable for Officer Bartlett to take this child and throw him up against the wall? With all respect to Mr. Wiggins, he's mistaken as to the timeline. You can see in the video, the one with the exhibit in front of the video machine, it's at 18 seconds. You can hear SRO Washington yell something to the effect of, it's good, they're stealing. Britt then hears that and you can see him two seconds later at 21 to 22 on the video. He's tapping Bartlett on the shoulder to let him know there wasn't a fight and saying there's not a fight. And then that's when almost immediately Bartlett's putting out his hand to help Mr. Glenn up to his feet. And so, as the officers testified, there was a great deal of noise, they couldn't hear. It's clear when you watch the video that Washington's hollers, they're stealing, they're stealing, and then Britt is over there tapping Bartlett on the shoulder. I guess my question is, why is this not more appropriate since we're parsing out what's happening in this video? And he has a version and you have a version of what's happening. Why is this not appropriate for a fact finder and a jury to make the determination as to what are the facts? Well, I don't think, I think the video, where the video contradicts what the testimony is, the court should look at what the video shows. And the video shows that when Britt taps Bartlett, Bartlett helps him to his feet. Similarly, there's a discussion about, in the briefs, about Mr. Glenn having his hands in the air. But if you watch the video very closely in slow motion, you can see that it's almost instantaneous. Officer Britt has his hand along, his right hand along the neck, shoulder area of Mr. Glenn, while he has his left hand against another student who's yelling and being disruptive. As he's got his hand there, Bartlett comes up, puts his hand around Mr. Glenn's waist. At this time, Bartlett's head clearly is facing this way toward, toward Mr. Glenn's backpack. And what Mr. Glenn does with his hands is not at all in the view of Mr. Bartlett, who's looking toward the backpack. And then almost immediately lifts him up, puts him on the ground, pulls him away, then the tap, then the helping to his feet. And all of this, from the time that the video starts to when he's helping him to his feet, is 18 seconds. We're talking about 18 seconds. It's just not similar to cases where, you know, things are happening slowly by the side of the road, that kind of thing. To jump ahead to a few cases that I wanted to mention to the court that were not in the task, the, the district court seemed to rule on the ground that the force used was de minimis and didn't consider the Graham factors, correct? Correct. Is there a de minimis exception that the Supreme Court has recognized with regard to how we balance and analyze these factors? Well, the circuit certainly has recognized. I, well, I'll get there. I asked a specific question. Has the Supreme Court recognized a de minimis exception? Not that it comes to mind immediately. Have we said that there's a de minimis exception or have we just said that as part of the Graham analysis, the amount of force being used and the injury resulting is so minimal that it can't meet the excessiveness part of the balancing? The latter has been always my understanding since Nolan was deciding. Right. In other words, we've not said that there's de minimis exception. What we've just said is it's sort of a shorthand for, you know, because the injury is so minor and because the force was so minimal and there was, there was at least some justification for it, some arrest, some search, something that justified using some degree of force that that's enough and so we don't need to go any further in analyzing things. Correct. More recent, or in 2016, in Taylor v. Taylor, which was 649, Federal Appendix 737. Well, I'm a lot less interested in the unpublished cases. I know. I'm much more interested in the published cases. The court is citing DeRuthy v. Pastor, which certainly was published in 2003. They talk about a threshold level of force and it's being de minimis and it's insufficient to support a claim for excessive force and you can use this threshold level of force regardless of what the purpose of the arrest is and whether there's any resistance. At what point do you say in a video that the use of force was no longer justified? What point am I saying? Yeah. In your view, based on the video, at some point you can't use force, right? Well, I would submit that for the 18 seconds that this is going on, it's justified. They don't have any, they're responding to what they've been told is a fight. It's undisputed. When they get there, they see no one's fighting and certainly that AG, I'll use AG, that AG is not fighting. Well, the coach has gotten there first and he has... I'm not talking about the coach. The officers get there. They were told to fight. They run in. They see no one is actually fighting. Counsel, let me finish. I apologize. They see no one's actually fighting and they see that AG is not resisting in any way whatsoever. Well, AG at that point is being held by his backpack by the coach. Right. Not resisting and not fighting. And both S.R. Washington, Britt Bartlett, they all testify that they're going in to relieve the coach who's a civilian and not put him in the middle of this and that it's their responsibility to take charge of it. So that's where Britt... Right. So somebody committed a crime or you want to restrain somebody, so you take them and you put their arms behind their back and put handcuffs on them or you take them and put them in the corner. Why do you have to put somebody in a headlock who's not resisting and not fighting when you arrive there? Well, I disagree with Your Honor that there was any headlock. It was holding to... You're right. I apologize. Why does he have to choke him? Again, he's holding these... He choked him. That's what the evidence, Counsel... Okay. The evidence in the light most favorable shows that he was choking him. Why do you have to choke somebody who did not fight and did not resist? Well, it would be considered de minimis under the cases. So that's what... So Counsel, Counsel, Counsel, that's one factor. So let's go through the factors. I understand there's no injury. That's one factor. And it's not that there's no injury. There were bruises. There were bruises. He had to see a psychologist. His head hurt as a result. And he had to go to a doctor and was prescribed medication, which he didn't take, but he was prescribed medication. So let's not say there's nothing, but you're right that it certainly isn't a broken bone. It certainly isn't a permanent injury like we've seen in some of these cases. And thank goodness for that. We have force being used. The force here by Officer Britt is that he choked him. Why is that not pretty severe force for somebody who is not resisting and did not fight? Well, at the time, Britt believed that there was fighting when he put his hand down. But if you're detaining someone, he's being detained by the coach, okay? And I understand that the officer wants to come in and take the individual that's being detained by the civilian. But at that moment, if the individual doesn't resist, you know, once you release and now the officer has the individual, if there's not a resistance, why is the use of force authorized? Well, he's authorized in his perception to be separating these two students. I mean, our case law is pretty clear. You can't use force once there's not an imminent threat or there's not danger. If you've handcuffed someone, you can't punch them. Well, let me ask you this. Let's say I'm driving home and an officer perceives that I am driving under the influence. I'm swerving in and out. I'm coming home from a bar. I stop. I pull over to the side of the road. I say, Officer, I'm sorry. I was drinking. Is the officer allowed to choke me? No, Your Honor. He's allowed to put me in handcuffs and put me behind in the car, right? Correct. Right. So you have here somebody who he believed to be fighting but who wasn't resisting at the time in any way and was isolated from any other person. Why are you allowed to choke that person? He's allowed to take control of his being. You're right. He certainly is. But for somebody who is fighting, he's certainly allowed to use the force necessary to stop them from fighting. But he wasn't fighting at the time. But the officer reasonably believed that there was a fight at that time. The officer reasonably believed that there was a ruckus going on. But when the officers got there, what they saw was no one fighting. So I understand that they believed going in there there was a fight or had been a fight. But they go in. No one is actually fighting. And two people are separated by two young kids are separated by a large man. And the officer is going to take control of the two people. Sure. He could take the civilian out of it. There's no doubt that they could have taken AG, put him in the corner, and frankly maybe even put handcuffs or some sort of restraining device on him. But that's not what we're talking about. We're talking about a choking move and some sort of wrestling takedown move. I would disagree that it's a wrestling sort of takedown move. But it is a takedown move. He put him on the ground. He puts him on the ground.  He goes on his knees. Unfortunately, on the road, you can't see whether the head bangs against the wall. But here we have to take as a given that that happened because that's what he went and testified. Right. But so the factors, so counsel, let's bring this back to the law. The factors we have to consider are the amount of force used. So it seems like a lot of force. And we have to consider the force in relation to the need. So even if the need was to restrain, and I'll concede that, I don't see how it's related to that. How is that not at least a jury question regarding the relationship? It's not a jury question because you can see on the video that for just two seconds he's holding them apart. Bartlett then takes him and pulls him away from the fracas. And it's not, you know, as far as opposing counsel focuses on Mr. Glenn's age. But I would argue that the age actually works in favor of the officers because it's clear that they have an interest in making sure that the school is safe, that there's order in the school. Their case is cited in the brief to that effect. Sure, but by choking a student who's not fighting or resisting at the moment that the choke hold and the takedown is used? I mean, you're right. They do need to protect people, but who are they protecting in that moment? Well, they're securing order in the school environment, and it sometimes requires students be subjected to greater controls than those even that are appropriate. Yeah, that means they don't have as much Fourth Amendment rights. I know what you're reading. You're reading from TLO and the cases that go from there. But you're right. There's diminished Fourth Amendment protections, but not physical assault, right? Well, it's not physical assault. They can look in their locker. That's not what we're talking about here. They're trying to restore order in what they perceive as a fight, and it's two seconds that he's holding them apart. And he's got a belligerent, yelling kid over here. They're surrounded by other students. I mean, whether it's 100, whatever the number is, it's clearly from the body-worn camera video a lot of students in the complex area, and I believe it's undisputed that there were at least 100. And they've got to restore order. It's two seconds. They're simply trying to get the students separated from one another, and then the second that they find out that it was stealing, they help him to his feet and take him to the office. He walks on his own accord to the office. That's clear from the video as well. He's not having any difficulty walking or anything of that nature. As far as the size differential and HM as guardian for HS, which is a case decided by this court on November 15th of this year. That's an unpublished opinion too, but there that's not a school setting. I'm very familiar with the case. It's not a school setting. There you are. It's not a school setting in that case, and the child in question there had committed a felony under Florida law. I mean, that's just a different circumstance and a different authorization for use of force. And there was resisting in that case. I would submit that similar to that case, the officer, Officer Britt and Officer Bartlett, reasonably believed that Glenn posed a threat, and that's what they were reacting to. And for two seconds and for a total of 18 seconds from start to finish, the entire incident, that they're worrying about gaining control in the school setting. It's not, again, like Hines v. Jefferson. Again, an unpublished decision. And, Ms. Woodward, you have reached the end of your time. Thank you. Thank you. And, Mr. Wiggins, you have four minutes remaining. Thank you. Coach Edgar and Officer Washington are not in this lawsuit because they did it right. They got to the scene. They separated to figure out the vending machine was being looted, and Coach Edgar was holding A.G. and the other young man, had him under control. Officer Bartlett, when he got there, he admits, it's in the record, it's in his deposition, yeah, I saw his hands up in the air. So if you saw his hands up in the air, obviously limp and no resistance, what on earth are you doing slamming him against a brick wall? That could have gone very differently, and I know I'm not going to bring up unpublished decisions. But the problem is, counsel, that we look at it objectively. In other words, his subjective intentions, and both of you are a bit guilty of this. Yes. His subjective intentions are not relevant. Right. True. But one could easily objectively say that an officer in Bartlett's position saw the hands in the air and the surrender pose, as it were. You asked Judge Luck about whether the U.S. Supreme Court has ever exercised or mentioned a de minimis exception. I do know this court in Lee v. Ferraro published, said when qualified immunity, excuse me, is qualified immunity is not appropriate when the grant analysis yields an answer beyond all doubt. That's what we have here. Both Bartlett and Britt, everyone has admitted the grant factors all overwhelmingly favor LaToya Glenn and her son. And, you know, an earlier argument about, I don't know what the case was, but it was child pornography. You talk about psychological injury and how that can just hurt a child going forward. You know, AG was 14, and he'd not been in trouble before, and to have a police officer, these guys have guns, throw him on the floor affected him a great deal, enormously. Is there evidence of that? As I understand it, he saw a therapist at the recommendation of the doctor. I think he went to eight sessions, and the indication was that it was helpful and it helped him, and that was it. Is there any evidence of any lasting injury? Not on the record, I will say. But that's what I'm most concerned about. This is what happens with psychological injury. Just like him telling, AG telling Bartlett, oh, I'm fine. It is in the record he said that because he's terrified. He didn't want to say anything else. He didn't want to talk to the man. So, you know, the district court issues an order in this case that says, oh, here are all the demented reasons. There's no use of force or whatever. He's fine. And I just want this court to know he's not fine. And it is only fortuitous that he was not more severely injured as a result of either one of these acts of aggression. But thank you. I do appreciate you hearing our case. Appreciate it. Thank you both. We have your case under advisement. Our final case.